HANNIBAL HARRIS *vs.* GEORGE WEST, Administrator.

An execution issued on a judgment or decree, within fifteen days of the first day of the next term of the court to which it is returnable, is not, in law, considered returnable to that term; but in such case an execution may be sued out, returnable to the next succeeding term of the court thereafter.

Not more than five days could have intervened between the date and return of the execution, and it is, therefore, void.

The statute contemplates the issuance of an execution on a judgment or decree for the purpose of enforcing it, then the defendant can have notice, and if the judgment or decree has been satisfied, he can take steps to show the fact.

This advantage may be lost to the defendant by lapse of time, if the execution is issued and returned not with a view of enforcing it.

The law contemplates the issuance of an execution, for the purpose of carrying into effect the judgment or decree on which it is founded. *Held*, that the execution in this case was not issued within the meaning of the statute.

IN error from the circuit court of Marshall county; Hon. Hugh R. Miller, judge.

The opinion of the court contains the facts of the case.

*D. C. Glenn,* for appellant.

The power of the courts to quash an execution for an abuse of the process has often been exercised, and is unquestionable. Where the process has been irregularly issued, or been abused in the execution of it, whether their regularity or abuse appears by the record or not, it is the constant and approved practice of our courts to exercise the power to quash the same upon motion; and in exercising this power, a court may inquire into the facts of the case by a jury or otherwise, as it may deem proper. *Anderson* v. *Carlisle,* 2 Wash. 50; 7 How. 412; 1 Munf. 269; 5 How. 280; 2 Leigh, 368; 5 Rand. 645.

The bill of exceptions states, that "the plaintiff admitted in open court, that he did not issue the execution for the purpose of having it levied." The execution was thus confessed by the plaintiff himself to have been issued for an illegal purpose. Under the law, the writ could issue, and could only issue, for the purpose of being levied. The first section of act 1822, (Hutch. Code, 897,) says the plaintiffs may prosecute writs of "*fieri facias,* for taking the goods and chattels, lands and tenements, of the person against whom such judgment is obtained." No other authority for issuance is given in all our law, or for any other "purpose." To attempt otherwise is a fraud, and illegal, and, above all, when perpetrated by the clerk himself, who is the legal custodian of all the process of the court. Again, the bill of exceptions shows, that "plaintiff took the execution. with the return indorsed upon it to the sheriff of Marshall. county, and "got him to sign the return, and immediately took the execution back to the clerk's office, and filed it away without giving, or causing to be given, any intimation to the defendant of the fact, that the said execution had been issued." Here is both fraud and concealment admitted and confessed. This defendant might have paid, on notice, the execution, saved interest, and saved his additional costs. He had a right to this notice; but by the express and intentional management of plaintiff he has been deprived of it.

If there ever was a case which called for the stern exercise of that corrective power, which all courts possess to suppress frauds on their process and abuse of it by their own officers,

Harris v. West.

this seems to me one which imperiously requires it. The execution was fraudulent and void, fraudulently intended to evade and avoid the law sanctioning its issuance, and it was never issued.

W. C. and A. K. Smedes, for appellee.

The statute of 1844 says, "nor shall any person sue out an execution on any judgment or decree, after seven years from the time the last execution issued on such judgment or decree." This act took effect on the 24th of February, 1844; and before the bar could become complete, seven years from that time must elapse without the issuance of an execution. Brown v. Wilcox, 14 S. & M. 127.

The only question then is, Has an execution issued on this judgment within seven years from 24th of February, 1844? There can be but one answer to this; an execution issued on the 16th of January, 1851, and so within the time. It was an execution; and none the less one because issued by the plaintiff himself, he being a deputy clerk. He had a right to issue it. It was none the less an execution because of West's intention merely to save the bar of the statute. The intention of the clerk who issues, or of the plaintiff in whose name it is issued, can not make it any more or less than an execution. The facts, that the plaintiff wrote out the return, and took it to the sheriff and got him to sign it, and took it back to the office, do not affect the fact, that it was an execution duly issued and returned. The return was true. Who wrote it is unimportant; the sheriff signed it. How long he had it, is immaterial. He had it long enough to do all he intended to do or could do with it. It was too late to levy with it, and had he kept it a week, he could have made no other return on it.

Mr. Justice FISHER delivered the opinion of the court.

The plaintiff in error made a motion to quash an execution issued on the 5th day of July, 1851, upon a judgment rendered against him, in the circuit court of Marshall county, on the 17th of March, 1842, on the ground, that said judgment was rendered more than seven years before the 24th of February,

1851, and that all remedy therein was barred by the statute of limitations, passed on the 24th day of February, 1844. The court below overruled the motion, when the counsel for the plaintiff in error took a bill of exceptions, which shows that the motion was resisted and overruled, on the ground, that the plaintiff below had caused an execution to be issued on the judgment, on the 16th day of January, 1851, before the expiration of seven years from the date of the passage of the statute of limitations.

It is insisted that this execution, under the facts stated in the bill of exceptions, was void, and that, therefore, it cannot be treated as an execution issued within the seven years, as contemplated by the 8th section of the act of limitations. Hutch. Code, 830, 831. The execution is not set out in the record, but the facts very clearly show, that it was made returnable to the regular January term, 1851, of said court. The court judicially know, that the first day of said term was the third Monday in January, and, therefore, not more than five days could possibly intervene between the date and the return of the execution, as the third Monday must have come before the 22d day of the month.

There are two statutes bearing upon this question, and either will show the execution to be void. The first was passed on the 22d of June, 1822, (Revised Code, 193,) and says, that executions shall be returnable to the first day of the next term of the court, in which the judgment shall have been rendered, so that there be at least fifteen days between the date of the writ and the return thereof. The act then provides how the execution shall issue and be made returnable, in case the fifteen days do not intervene the date and the return day.

The other statute was passed the 21st of January, 1823, and says, that if fifteen days shall not intervene the date of the execution and the next term of the court in which the judgment shall have been rendered, the plaintiff or plaintiffs may sue out an execution returnable to the term next succeeding the first term of the court thereafter.

We have already seen that, under the facts in the record, not

more than five days could have intervened the date and return day of the execution. It was, therefore, void.

We have also examined the question submitted upon the agreed state of facts, and it is clear, that the execution was not intended to be executed, but only to operate against the bar of the statute of limitations, which says, that no person shall sue out an execution on any judgment or decree after seven years from the time the last execution issued. This statute clearly contemplates the issuance of an execution for the purpose of enforcing the judgment. When it issues for this purpose, the defendant will likely have notice of it, and if in the mean time the judgment has been paid, he can take steps to supersede the execution, and avail himself of his evidence which he may then have to show payment.

This advantage, however, might be lost to him by the lapse of time, if the plaintiff were allowed secretly to issue his execution, from time to time, a few days before court, and get the sheriff to sign a return, "came to hand too late to levy and sell before the return day."

The law means an execution in the full sense of the term, for the purpose of obtaining, actually, possession of the thing or money recovered by the judgment. 3 Bacon, 351. Or, as defined in other books, for the purpose of carrying into effect the judgment. The execution of the 16th January, 1851, was not issued for this purpose; and it cannot, therefore, be treated as an execution within the meaning of the statute.

Judgment reversed, motion to quash sustained, and execution quashed.