LAND, J.
The plaintiff is a' commercial partnership, domiciled in the state of Mississippi, and is composed of R. H. Martin of said state, and of W. P. Martin of the state of Tennessee. The defendant is a residen't of the city of New Orleans.
Plaintiff, alleging that it is the bona fide, holder and owner for value before maturity of a certain promissory note for $5,000, dated at Meridian, Miss., November 27,1918, and payable 90 days after date, has instituted this suit against S. S. Levy, who indorsed said note, to recover said sum, less a credit of $684.90, paid August 1, 1919, and also to recover 15 per cent, on said amount as a reasonable attorney’s fee for the collection of said note.
The note sued upon was executed by A. D. Watson in the state of Mississippi, and is made payable to the order of plaintiff, Martin & Son, at the Citizens’ National Bank of Meridian, in said state.
*1030 It is conceded tliat tlie laws of the state of Mississippi govern the interpretation and effect as to the obligation created by said note between the parties.
While plaintiff alleges that under the laws of that state, the defendant, S. S. Levy, is liable primarily upon said note as a comaker, and is not entitled to plead the defenses usually available to indorsers of promissory notes, counsel for plaintiff have abandoned such contention in this court, as their position was based upon certain Mississippi decisions rendered prior to the adoption by that state in the year 1916 of the Uniform Negotiable Instruments Law (Miss. Laws 1916, c. 244).
Counsel on both sides admit that the defendant is secondarily liable on the note sued upon under the Mississippi statute.
Defendant admits in his answer that the consideration for making said note was a loan from plaintiffs to the maker; that he indorsed said note before its delivery to the plaintiffs, the payees, to attach credit to said note; that the maturity of the note has passed; and that he has refused to pay same, for the reason that he has been released and discharged by a certain agreement entered into between plaintiffs, the payees, and A. D; Watson, maker, and others, extending the time within which to pay said note. Defendant alleges that said agreement was made without his knowledge or consent, and without the reservation of any recourse against him; that said agreement constituted a novation of the original contract embodied in said note, and created a new and separate contract, upon which defendant was not surety, and to which he was in no sense a party, thereby releasing and discharging him from any and all obligations as an indorser or surety upon said note to the plaintiff.
The following facts are not disputed: (1) That the defendant indorsed the note as surety or one secondarily liable thereon; (2) that the agreement under which defendant claims his release was entered into between the holder and the maker of the note and others without his knowledge or his consent; (3) that no right of recourse was reserved in this agreement against defendant as indorser.
The sole issue remaining for decision is: Was defendant as indorser, or one secondarily liable on the note, released by virtue of this agreement? Dor the solution of this question, we must look to, and be guided by, the decisions of the courts of the state of Mississippi.
The agreement which forms the basis of the defense here reads as follows;
“This agreement, entered into this the 24th day of April, 1919, by and between A. D. Watson, Martin & Son, a copartnership composed of W. P. Martin and Robert H. Martin, and W. P. Martin, guardian of W. S. Eaton, witnesseth: That whereas, the said A. D. Watson is indebted unto the said Martin & Son in the sum of five thousand dollars ($5,009), evidenced by the promissory note of the said A. D. Watson in favor of the said Martin & Son, dated November 27, 1918, and due ninety days after date; and whereas, the said Martin & Son have indorsed this said note to W. P. Martin, guardian of W. S. Eaton; and whereas, all of the parties hereto are willing for the said A. D. Watson to liquidate the said indebtedness by shipping veneer for the account of W. P. Martin, guardian of W. S. Eaton, until sufficient veneer is sold and shipped to fully liquidate the said indebtedness: It is therefore mutually agreed by and between all of the parties hereto that the said A. D. Watson shall ship and sell for the account of W. P. Martin, guardian of W. S. Eaton, sufficient veneer to liquidate the said indebtedness, the said shipments and sales of veneer to be made at the rate of not less than three carloads of veneer per month, and the said shipments and sales of veneer to begin not later than the week ending June 17, 1919, and to continue as herein-before provided until the said indebtedness is liquidated in accordance with the terms of the agreement.
“It is agreed and understood that all of the invoices for the veneer sold and shipped under this agreement are to be assigned to the Citizens’ National Bank of Meridian, Mississippi, *1032 and that the proceeds derived from the said invoices are to be credited to the account of W. P. Martin, guardian of W. S. Eaton, by the said bank until the amounts derived from . the said invoices is sufficient to liquidate the indebtedness herein referred to, and that as these said credits are made, to the account of-W. P. Martin, guardian, that the said bank will credit the said note with the sums so credited to the account of W. P. Martin, guardian of W. S. Eaton, and that when the said note and all interest is fully paid, that the said bank will mark the note paid, and deliver same to the said A. D. Watson.”
“Signed in triplicate this the 24th day of April, 1919.
“Original signed: A. D. Watson. Martin & Son, by W. P. Martin. W. P. Martin, Guardian of W. S. Eaton.”
"The above agreement is made with the full knowledge and consent of the Meridian Veneer Company. Meridian Veneer Co., by J. E. Reed, Jr., Treas.”
Payments are required under the terms of the agreement to be made for the account of W. P. Martin, guardian of W. S. Eaton. As shown by indorsements made on the reverse of the note, Martin & Son had sold, transferred, and delivered this note to W. P. Martin, guardian for W. S. Eaton, on February 20, 1919, and W. P. Martin, guardian, had resold, retransferred, and redelivered said note to Martin & Son February 25, 1919. It is conceded by all of the parties, however, that the legal effect of the situation is as though W. P. Martin, guardian, had riever been connected therewith, and that the proceeds of the sales of veneer provided for in said agreement should be applied to the credit of Martin & Son in liquidation of the indebtedness on the note, which matured on February 25, 1919.
Paragraph 6, § 120, c. 244, Mississippi Laws 1916, the Uniform Negotiable Instruments Act of that state provides that “any agreement binding upon the holder to extend the time of payment, or to postpone the holder’s right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved,” discharges the party secondarily liable.
Under the decisions of the courts of the state of Mississippi such an agreement is binding, if it, is supported by a new and valuable consideration, and grants an extension of time for a definite period, or in its consequences may have the effect of giving such extension, or postpones the holder’s right to enforce the instrument. Hunt v. Knox, 34 Miss. 655; Wadlington v. Gary, 7 Smedes & M. (Miss.) 522; Newell v. Hamer, 4 How. (Miss.) 690, 35 Am. Dec. 415; Roberts v. Stewart, 31 Miss. 664; Thornton v. Dabney, 23 Miss. 559; Harris v. West, 25 Miss. 156; Garnett v. Kirkman, 33 Miss. 389; Miller v. Lewis, 103 Miss. 598, 60 South. 654.
The note sued upon became due February 25, 1919, and the agreement postponing the holder’s right to enforce the instrument was entered into between Watson, the maker, and plaintiffs, the holders, on April 24, 1919, or two months after the maturity of the note.
In the case of Moore v. Redding, 69 Miss. 841, 13 South. 849, the court said:
“It is equally well settled that if the creditor, without the consent of the surety, enters into a contract with the principal, by which the right of action is suspended for a specific time, the surety is released. A, contract, of course, implies a consideration, and the agreement of the parties upon the same.”
This decision is in perfect harmony with the law merchant on the subject. Chitty says there is no obligation of active diligence on the part of the holder to sue the acceptor or any other party, and he may be passive and forbear to sue, as long as he pleases; but he must not so agree to give time to the acceptor, and to preclude himself from suing him, and suspend his remedy against him, to the prejudice of the drawer and indorsers. To make any agreement for indulgence oblig *1034 atory, it must be for an adequate consideration. Chitty on Bills (8th. American Edition) 441, 442, 443, 446; 3 Kent’s Commentaries (2d Ed.) 111, 112.
At the date of the agreement, April 24, 1919, the plaintiffs, the holders, had acquired the right to enforce the collection of this note for two months. The agreement is signed not only by the plaintiffs and Watson, the maker of the note, but also by the Meridian Veneer Company, which was to supply the veneer to Watson, to be shipped and sold by him, and proceeds applied by the bank to the liquidation of the note, principal and interest. It is true that the Meridian Veneer Company is not named as a party to the agreement in the instrument signed by the parties; yet at the foot of this agreement we find the signature of the treasurer of said company annexed to the following statement: “The above agreement is made with full knowledge and consent of the Meridian Veneer Company.” Ln other words, the plaintiffs as holders of the note sued upon were not willing to rely upon a mere agreement signed by Watson alone to liquidate the note and interest from the proceeds of sales of veneer to be shipped by him, but required the company undertaking to furnish this veneer to Watson to sign the agreement also, as security for its performance, and, evidently, as a part of the consideration for the extension granted to Watson. This agreement is executed in triplicate, and it is reasonable to suppose that one of these instruments was delivered to the Veneer Company, as W. P. Martin, guardian of W. S. Eaton, the third person named in the agreement, is conceded not to be connected with the transaction. It is stipulated between the parties to the agreement:
“That the said A. D. Watson shall ship and sell for the account of W. P. Martin, guardian of W. S. Eaton, sufficient veneer to liquidate said indebtedness, the said shipments and' sales of veneer' to be made at the rate of not less than three carloads of veneer per month, and said shipments and sales of veneer to begin not later than the week ending June 17, 1919, and to continue as hereinbefore provided until the said indebtedness is liquidated in accordance with the terms of the agreement.”
Even if we concede that there is no fixed period for the extension after June 17, 1919, yet it must be conceded that the period from April 24, 1919, the date of the agreement, to June 17, 1919, when the shipments of veneer were to begin, is a fixed and definite period of extension of time of payment of the note by the holder, whose right to enforce the instrument had accrued on February 25, 1919, the date of the maturity of the note.
The agreeement was not a mere gratuitous promise on the part of the plaintiff to suspend suit on the note. Security as to the furnishing of the veneer had been demanded, and the veneer company had given its written consent to the agreement. In addition to this, the agreement requires that said note and all interest be fully paid through the sales of veneer shipped by Watson, the maker. This necessarily included interest on the note during the period of extension, from the date of the agreement April 24, 1919, to the date of the commencement of the shipments June 17, 1919.
Under the Mississippi decisions the right of the creditor to get interest for a definite period is a sufficient consideration to uphold a promise to forbear, and to tie the hands of the creditor so as to discharge a surety not consenting to it.
Brown v. Prophit, 53 Miss. 649; Keirn v. Andrews, 59 Miss. 41; Harrison et al. v. Garner, 110 Miss. 586, 70 South. 700; Chute v. Pattee, 37 Me. 102; McComb v. Kittridge, 14 Ohio, 348 ; 2 Am. Lead. Cas. (5th Ed.) 469.
In the case of Moore v. Redding, 69 Miss. *1036 841, 13 South. 849, the court, in considering the question of consideration, said:
“The right to have the use of money for a defined time, and the right to have interest at any agreed rate, for any defined time, are alike deemed valuable in law; and reciprocal promises — one by the creditor, to permit the money to remain on interest, and the other by the debtor, to retain it on interest — mutually support each the other. Brown v. Prophit, 53 Miss. 649.”
We therefore conclude that the agreement of April 24, 1919, extending the time of payment of said note, was an agreement binding upon the holder, and estopping him from suit upon the note, and that the extension was for a fixed period at least to June 19, 1919, and was based upon a sufficient consideration.
As this agreement was made without the assent of defendant, the party secondarily liable upon said note, and without express reservation of the right of recourse against him, he was discharged as indorser on said note.
In addition to this, the agreement in question creates a new obligation, changing the date of payment of the note, providing a pew method for its liquidation, and supplying a new surety, guaranteeing the furnishing of veneer to Watson, to be by him shipped and sold, and the proceeds applied to the payment of the note and interest.
After maturity of the note, the defendant, as indorser, had the right to pay said note at any time and to proceed against the maker for reimbursement. The agreement in question destroyed that right, and consequently released defendant.
The lower court correctly rejected the demand of the plaintiff.
Judgment affirmed.
Rehearing refused by Division 0, composed of Justices OVERTON, ST. PAUL, and THOMPSON.